RICHARD R. REGIS ET AL. *v.* CONNECTICUT REAL
ESTATE INVESTORS BALANCED
FUND, INC., ET AL.
(10806)

DALY, HEIMAN and FREEDMAN, Js.

Argued June 3—decision released August 25, 1992

*Christopher J. Smith,* for the appellant (named defendant).

*Ernest J. Cotnoir,* for the appellees (plaintiffs).

DALY, J. The named defendant[1] appeals from the trial court's judgment of strict foreclosure of a mortgage used to secure the purchase of a piece of real property. The defendant claims that the trial court improperly (1) failed to find that a mutual mistake concerning a material term of the contract existed and (2) rendered judgment of strict foreclosure because the plaintiff made a fraudulent or negligent misrepresentation. We affirm the judgment of the trial court.

The trial court found the following facts. In 1979, the plaintiff Richard Regis[2] purchased property located in the borough of Danielson. Because the property did not abut any accepted street in the borough, the plaintiff obtained a twenty foot right-of-way to gain access to the property. In 1979, the plaintiff submitted an application for a change of zone classification for the property with the Danielson planning and zoning commission. Along with the request for change of zone, the plaintiff submitted a plot plan concerning the proposed construction of a forty-eight unit apartment complex. On March 4, 1980, the Danielson planning and zoning commission granted the application and changed the property classification accordingly. On April 3, 1980, the plaintiff was notified that a zoning permit for the construction of a forty-eight unit apartment complex would be issued as long as the plaintiff satisfied all of the conditions set by the zoning commission. The plaintiff, however, never sought issuance of the zoning permit. The plaintiff testified that he never intended to build the apartment complex and submitted the plot plan to secure the change of zone so as to increase the value of the property.

---

[1] A subsequent lienholder was named as a defendant in the action. We will refer in this opinion to the named defendant as the defendant.

[2] The plaintiffs are Richard and Naomi Regis. Because Richard Regis was the only person that dealt with the defendant, we refer to him as the plaintiff throughout the opinion.

During the 1970s, the plaintiff had been involved in real estate transactions with Charles Lehn, a principal of the named defendant. In 1986, Lehn viewed the property and the plaintiff showed him the notice from the zoning commission concerning the permit to construct an apartment complex on the property. Because the notice was issued in 1980, the defendant requested that the plaintiff obtain updated information concerning the construction of an apartment complex. The plaintiff obtained a letter from the chairman of the Danielson planning and zoning commission dated April 30, 1986. The April 30, 1986 letter indicated that the zoning permit would be granted as long as certain more stringent conditions were satisfied. On May 9, 1986, the property was conveyed to the defendant for $200,000. The defendant made a payment of $30,000 and executed a promissory note secured by a mortgage for the balance of the purchase price. From May 9, 1986, until 1989, the defendant did not attempt to obtain a zoning permit to build the apartment complex. In 1989, the defendant attempted to obtain a zoning permit for the construction of the apartment complex to facilitate a sale of the property to another buyer. The defendant was denied a zoning permit because the property did not have a fifty foot right-of-way to a public road. The defendant's application for a variance from the right-of-way requirement was denied by the Killingly zoning board of appeals.[3]

The trial court found that the fifty foot right-of-way requirement was in effect at the time of the sale on May 9, 1986, but was not in effect in 1980 when the plaintiff first sought a zoning permit.

Paul F. Trahan, the chairman of the Danielson planning and zoning commission in 1986, testified about the

[3] Since September 1, 1987, the town of Killingly has administered the borough of Danielson's zoning regulations. The borough of Danielson, located in the town of Killingly, still maintains separate zoning regulations.

April 30 letter. Trahan knew that the property lacked a fifty foot right-of-way to a public road and testified that he did not notify the plaintiff about the right-of-way requirement because he concluded that the borough of Danielson could not enforce the fifty foot access requirement in this case. He believed that the fifty foot access requirement was not enforceable because the plaintiff had used the property without the fifty foot right-of-way in the past and that the twenty foot right-of-way could not be widened to satisfy the fifty foot access requirement. Trahan testified that he felt that his April 30, 1986 letter constituted zoning approval for the construction of a forty-eight unit apartment complex on the property even though the property did not have a fifty foot right-of-way abutting a public street. The court found that the Danielson planning and zoning commission lacked the authority to waive the fifty foot right-of-way requirement and that only the zoning board of appeals could waive that requirement.

In 1989, the plaintiff brought a foreclosure action against the defendant to recover the unpaid balance of the mortgage. In June of 1990, the defendant made a mortgage payment of $35,000 after which the plaintiff withdrew the foreclosure action. In that action, the defendant did not raise any claim of mutual mistake, negligent misrepresentation or fraud in the first foreclosure action.

The plaintiff brought the present action in October, 1990. The defendant filed a counterclaim for damages and pleaded fraud and mutual mistake as special defenses. The court found that the defendant failed to prove that the plaintiff made a false statement about the property. There was no evidence showing that the plaintiff, as a part of any inducement to purchase, guaranteed the right to build an apartment complex on the property. On the basis of the representations of the

chairman of the Danielson planning and zoning commission, the plaintiff believed that the defendant could obtain a zoning permit in May, 1986.

The court further found that there was no mutual mistake on the part of the plaintiff. The plaintiff intended to sell this property and complied with the defendant's requests to update the 1980 zoning permit. The plaintiff did not stipulate, assure or guarantee that the apartment complex could be built on the property. The court found that while Lehn may have mistakenly believed that the plaintiff had guaranteed that Lehn would be allowed to build an apartment complex, such mistake would be unilateral and not mutual.

The court further noted that even if the defendant established its special defense of mutual mistake, it failed to seek timely rescission of the contract. The defendant did not attempt to obtain a zoning permit until three years after its acquisition of the property. Upon learning of the denial of the permit, the defendant did not seek rescission of the contract and offer to return the property to the plaintiff in exchange for the purchase price. The defendant did not raise the defense of mutual mistake in the plaintiff's first foreclosure action which was withdrawn upon the defendant's paying the outstanding mortgage arrearage. The defendant also did not raise the defense of mutual mistake in its first answer to the plaintiff's complaint in this action which was filed on December 14, 1990. In March, 1991, the defendant raised the defense of mutual mistake for the first time. The court found that the defendant's conduct precluded it from being entitled to rescind the contract even had the defendant established the existence of a mutual mistake between the parties.

The court also examined the contract to determine if the plaintiff had promised the defendant that it would

be allowed to construct an apartment complex. The court focused on the contractual provision stating that "[s]eller represents that the premises have been approved by the Borough of Danielson for use and development for apartments in conformity with certain conditions and agreements as set forth in letters dated April 1, 1980, April 3, 1980, and April 30, 1986, respectively from the Borough Officer to Richard R. Regis, attached hereto as Schedule C." The court noted that "[t]he date April 30, 1986, is written in ink and also written in ink following the words 'Schedule C' is the phrase, 'But only to the extent provided in these letters.' " The latter phrase written in ink supported the court's finding that the construction of the apartment complex was not a condition of this conveyance of property. The court found that this phrase indicated only that the plaintiff believed that a zoning permit would be issued by the borough of Danielson according to the April 30, 1986 letter.

The court also rejected the defendant's counterclaim that the plaintiff's conduct constituted a violation of the Connecticut Unfair Trade Practice Act of General Statutes § 42-110b. The defendant has not challenged this finding on appeal.

The defendant challenges the trial court's finding that it failed to prove the existence of a mutual mistake between the parties that would justify rescinding the contract.

"A mutual mistake is one that is common to both parties and effects a result that neither intended. *Lopinto* v. *Haines,* 185 Conn. 527, 532, 441 A.2d 151 (1981). Whether there has been such mistake is a question of fact." *Inlands Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.,* 218 Conn. 703, 708, 590 A.2d 968 (1991).

The defendant must establish that the trial court's factual findings were clearly erroneous. Practice Book § 4061. A trial court's factual finding is clearly erroneous if there is no evidence to support it or " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985), quoting *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948). Great deference is given to the trial court's factual findings because of its ability to assess the credibility of witnesses and weigh the evidence. *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.,* supra.

The trial court found that the plaintiff intended only to sell this property. The defendant's intended use of the property for an apartment complex was not a use that was guaranteed by the plaintiff in selling this property. If the issuance of the zoning permit were a material condition of the sale, the defendant could have required that the plaintiff obtain a zoning permit at the time of the conveyance instead of relying on the April 30, 1986 letter. In his effort to sell this property, the plaintiff satisfied the defendant's request to update the borough of Danielson's position on the granting of the zoning permit by obtaining the April 30, 1986 letter. The plaintiff did everything the defendant requested in order to sell the property.

The defendant argues that the parties had a mutual understanding that the sale was contingent on the use of the property to build the apartment complex. The defendant relies on *Weld* v. *Melly,* 16 Conn. App. 555, 548 A.2d 14 (1988), to support its position that the trial court should have found that a mutual mistake existed between the parties. In *Weld,* the plaintiffs claimed that the defendant made representations that a septic sys-

tem was located within the boundary lines of the subject property sold by the defendant to the plaintiffs. The plaintiffs later discovered that the septic system was located on property owned by a third party and not the defendant. There was conflicting evidence concerning representations made by the defendant about the location of the property's boundaries. Id., 557. The defendant admitted that she believed when the septic system was installed that it was built on her property. The trial court found that both parties thought that the septic system was located on the property. Id., 557–58. Despite this finding, the trial court concluded that there was no mutual mistake. Id., 558. We reversed the trial court's judgment because this conclusion was not supported by its finding that both parties believed that the septic system was located on the property.

In the present case, the trial court found that only the defendant was mistaken in believing that the issuance of a permit for the building of the apartment complex was a condition of the sale. At the time of the conveyance, the plaintiff relied on the April 30, 1986 letter which indicated that a zoning permit would be issued for the apartment complex. The court found that the plaintiff was not mistaken about the availability of a zoning permit for the apartment complex. Therefore, unlike the court's conclusion in *Weld* v. *Melly,* supra, the trial court's conclusion in this case is supported by its factual findings. On the basis of our review of the record, we hold that the trial court's finding that there was no mutual mistake was not clearly erroneous.

The defendant claims that the trial court improperly rendered judgment for the plaintiff because the evidence revealed that the plaintiff had made a fraudulent or negligent misrepresentation about the property's suitability for an apartment complex. We disagree.

"Whether evidence supports a claim of fraudulent or negligent misrepresentation is a question of fact. *J. Frederick Scholes Agency* v. *Mitchell,* 191 Conn. 353, 358, 464 A.2d 795 (1983); *Miller* v. *Appleby,* 183 Conn. 51, 55, 438 A.2d 811 (1981). Thus, we will disturb the trial court's determination that the [plaintiff] made no fraudulent or negligent misrepresentations only if, in light of the evidence and the pleadings on the whole record, such a conclusion could not reasonably have been reached." *McClintock* v. *Rivard,* 219 Conn. 417, 427, 593 A.2d 1375 (1991). We presume that the trial court properly considered all of the evidence submitted by the parties. *Solomon* v. *Aberman,* 196 Conn. 359, 376, 493 A.2d 193 (1985). "It is well established that the appellate courts will not retry facts or pass upon the credibility of witnesses and the weight to be accorded the evidence." *Chomko* v. *Patmon,* 19 Conn. App. 483, 488–89, 563 A.2d 311, cert. denied, 212 Conn. 819, 565 A.2d 539 (1989).

"The essential elements of an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." *Miller* v. *Appleby,* supra, 54–55. A claim of fraud must be proven by "clear and satisfactory evidence." Id., 55.

The trial court found that the defendant failed to establish that the plaintiff knew that the zoning permit would not be issued for the apartment complex at the time of the conveyance. In 1980, the plaintiff's plan to construct an apartment complex was approved by the Danielson planning and zoning commission. At the defendant's request and prior to the conveyance, the plaintiff obtained a letter from the Danielson planning and zoning chairman that an apartment complex zoning permit would be issued subject to certain conditions.

Both the plaintiff and the defendant reasonably relied on this letter. The defendant failed to offer clear and satisfactory evidence proving that the plaintiff, despite assurances from the planning and zoning commission that the apartment complex could be built, knew that this was a false representation. The plaintiff noted in the contract that the granting of the zoning permit for the apartment complex was controlled by the planning and zoning commission and that the issuance of a zoning permit was not a condition of the property conveyance. On the basis of our review, we find that the trial court's finding that the plaintiff did not know that the zoning permit would not be granted at the time of conveyance was supported by the evidence. Thus, we cannot disturb this finding.

The defendant further argues that the plaintiff knew that the property lacked the fifty foot access to a public road that was required for the construction of an apartment complex under the zoning requirements in effect at the time of the conveyance. The defendant claims that the plaintiff knew as early as 1980, when he first sought the zoning change for the property, about the lack of access to a public road. The defendant posits that because the plaintiff knew that a fifty foot access was required for the issuance of a zoning permit for the building of an apartment complex, the plaintiff negligently represented that an apartment complex could be constructed on the property.

"This court has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact 'may be actionable if the declarant has the means of knowing, ought to know or has a duty of knowing the truth.' " *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, 202 Conn. 206, 217, 520 A.2d 217 (1987), quoting *Richard* v. *A. Waldman & Sons, Inc.*, 155 Conn. 343, 346, 232 A.2d 307 (1967).

The defendant claims that the lack of access to a public road was brought to the plaintiff's attention in 1980 when the plaintiff first sought site plan approval for the apartment complex. The plaintiff claimed to be aware of an access problem only as to a private road that had been used as a public right-of-way by the neighboring landowners. According to the plaintiff, the only other concern about the roadway had to do with its maintenance upgrade and not its width. The planning and zoning commission did grant the plaintiff's permit for construction of the apartment complex despite the alleged access problems. There was no requirement that the plaintiff had to widen the access to the public road. On this basis, the plaintiff believed that no existing access problem would prevent development of an apartment complex.

The defendant did not offer any evidence showing that the plaintiff stated that there was sufficient access to a public road. The plaintiff stated only that an apartment complex could be constructed subject to the conditions established by the planning and zoning commission. The defendant failed to establish that the plaintiff should have known that the April 30, 1986 letter indicating that an apartment complex would be constructed on the property was false or inaccurate. The trial court's finding that the defendant failed to prove that the plaintiff made a negligent misrepresentation is not clearly erroneous.

The judgment is affirmed and the case is remanded with direction to set new law days.

In this opinion the other judges concurred.